# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **TERRANCE J. FREEMAN,**<br><br>        **Plaintiff,**<br><br>  v.<br><br>**WARDEN BELMONT CORRECTIONAL INSTITUTION,**<br><br>        **Defendant.** | **Case No. 2:09-cv-317**<br><br>**Judge Peter C. Economus**<br><br>**MEMORANDUM OPINION AND ORDER** |

Petitioner Terrance Freeman, a state prisoner, filed this action under 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. In his timely-filed[1] petition, Freeman asserts that (1) the trial court violated his right to confront his accuser by excluding allegedly inconsistent prior statements, (2) Freeman was convicted on insufficient evidence, violating his right to due process; and (3) he was denied effective assistance of counsel during his appeal. For the reasons set forth below, the Court dismisses Freeman's petition.

## I.    Background

The Ohio Court of Appeals for the Seventh Appellate District set forth the facts of this case on direct appeal. These factual findings are presumed to be correct, a presumption Freeman may rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The facts are as follows:

> On June 23, 2006, a confidential informant working for the police contacted Anton Banks and asked to purchase $ 500.00 worth of powdered cocaine from him. Banks contacted Freeman, who said that he had that much cocaine available for sale. Banks then arranged for the informant to pick him up and take him to the home where Freeman was staying. The informant gave Banks

---

[1] As Respondent concedes, Petitioner's petition is timely because it was filed less than one year after the deadline for seeking review with the U.S. Supreme Court. (28 U.S.C. § 2244(d)(1)(A) (one year limitation period running from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"); Dkt. 7-1 at 95 (Supreme Court of Ohio decision dated Oct. 29, 2008); Sup. Ct. R. 13 (90 day filing deadline for petition); Dkt. 2 (Petition dated April 23, 2009); Dkt. 7 at 39 (Respondent's statement on timely filing).)

> $ 500.00 of pre-recorded currency and Banks went to see Freeman and complete the purchase. In the house, Freeman pulled out a black lockbox containing powdered cocaine and scales, weighted out the appropriate amount of cocaine, and handed the cocaine to Banks. Banks gave Freeman $ 480.00 and kept $ 20.00 for himself.
>
> Banks and the informant were stopped by police after the sale and Banks was arrested. Soon thereafter, the police obtained and executed a search warrant on the home where Freeman was staying. Freeman was not present at the time of the raid, but the people who were present told the police to look for the lockbox. When police found the lockbox, they opened it and discovered powdered cocaine and scales.
>
> Freeman found out the police were searching the residence as the police were conducting the raid. Soon thereafter, he was arrested in a parked car just over a block away from the home where he was staying. The police searched the car and discovered over $ 1,800.00 in cash in the trunk. Among that cash were $ 480.00 of the pre-recorded currency the informant gave to Banks. The other $ 20.00 of pre-recorded currency was found on Banks when he was arrested.
>
> Forensic analysis of the contents of the lockbox showed that it contained powdered cocaine. Furthermore, forensic analysis showed that the substance sold to Banks was also powdered cocaine.
>
> Freeman was indicted on July 12, 2006, for trafficking in and possession of drugs. . . . The matter proceeded to trial . . . The jury found Freeman guilty of both counts in the indictment. The trial court then sentenced Freeman to four years imprisonment on each count and ordered that those terms of imprisonment be served consecutively.

State v. Freeman, 2008 Ohio 2925, ¶¶ 3–6 (Ohio Ct. App., Jefferson Cty. June 6, 2008).

Represented by counsel, Freeman timely appealed his conviction to the Ohio Court of Appeals for the Seventh Appellate District, raising the following assignments of error:

> 1. [Freeman] was denied the effective right of cross examination of certain prosecution witnesses; specifically cross examination as to inconsistent sworn statements for impeachment purposes contrary to Ohio Rules of Evidence 607, 608 and 613.
>
> 2. [Freeman's] conviction was against the manifest weight of the evidence.

2

(Answer Ex. 5 (Dkt. 7-1 at 16, 21).) The Court of Appeals affirmed the judgment. (Answer Ex. 12 (Dkt 7-1 at 48).)

Freeman, pro se, timely appealed to the Supreme Court of Ohio, raising the following assignments of error:

1. [Freeman] was denied the effective right of cross examination of certain prosecution witnesses; specifically cross examination as to inconsistent sworn statements for impeachment purposes contrary to Ohio Rules of Evidence 607, 608 and 613.

2. [Freeman's] conviction was against the manifest weight of the evidence.

3. [Freeman] was denied his right to due process and of assistance of counsel because his Appellate Counsel provided ineffective assistance.

(Ans. Ex. 14 (Dkt. 7-1 at 63).) The Supreme Court of Ohio declined jurisdiction and dismissed the appeal. (Ans. Ex. 15 (Dkt. 7-1 at 95).) Freeman filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254 on April 13, 2009.

## II.    Ground Three: Ineffective Assistance of Counsel

Before addressing Grounds One and Two of the petition, the Court first considers Ground Three because it involves an unexhausted state remedy and is subject to Freeman's alternative motion to dismiss.

As his third ground for relief, Freeman states that he "was denied his right to effective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution." (Supp. Petition, Attach. 3 (Dkt. 6-3).) Specifically, Freeman states in his petition that "[a]ppellate counsel's failure to raise [several listed issues] on appeal fell below an objective standard of reasonableness," and "the mistakes and omissions by [Freeman's] *trial* counsel amounted to the ineffective assistance of counsel." (*Id.* (emphasis added).) Freeman's third ground for relief focuses entirely on his appellate counsel's alleged failures, and discusses his trial counsel's

3

specific alleged failures only as issues which Freeman states should have been raised by his appellate counsel. Therefore, it appears that "*trial* counsel" in the last paragraph is a typographical error. This conclusion is supported by Freeman's Memorandum in Support of Habeas Corpus Petition (Dkt. 13) and Motion for Stay and Abeyance (Dkt. 11), both of which address ineffective assistance of appellate, not trial, counsel. The Court therefore considers only a claim of ineffective assistance of *appellate* counsel.

Respondent asserts that Freeman has not exhausted his state court remedies as to this claim. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, a petitioner must "fairly present [his] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," so that the state courts are "alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (internal quotation marks omitted) (citations omitted).

In her Answer, Respondent asserts that Freeman has an unexhausted state court remedy as to his claim of ineffective assistance of appellate counsel: Ohio Appellate Rule 26(B)(1) provides that criminal defendant "may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel" by filing an application "in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." *See also State v. Davis*, 894 N.E.2d 1221, 1224 (Ohio 2008) (noting that Rule

4

26(B) "established appellate courts as the venue in which defendants should bring delayed claims of ineffective assistance of appellate counsel").

Freeman conceded in his Merit Brief that "he can still petition for a re-opening to attempt to address this issue more fully at the appellate level." (Dkt. 13 at 18–19.) He sought a stay, stating that he was "in the process of petitioning the Ohio Court of Appeals to reopen and re-hear this issue." (Dkt. 11 at 2.) Alternatively, if the Court denied the motion to stay, Freeman "move[d] . . . to then waive and dismiss any review by the court of the issues of ineffective assistance of appellate counsel and proceed on the other properly exhausted claims for relief so as to avoid dismissal." (*Id.*)

The Magistrate Judge denied Freeman's request for a stay, noting that Freeman had exhausted his state remedies. (Dkt. 15.) The Magistrate Judge relied on the 2007 opinion in *Sales v. Wilson*, in which the Northern District of Ohio held that a habeas petitioner's ineffective assistance of appellate counsel claim was exhausted because he had raised the claim on appeal to the Supreme Court of Ohio:

> Ohio's Supreme Court has repeatedly approved the application of res judicata to bar judicial review of an Ohio R. App. P. 26 application to reopen appeal due to ineffective assistance of appellate counsel, where the claim of ineffective assistance of appellate counsel could have been raised on direct appeal to the Ohio Supreme Court. . . . Considering that [the petitioner] claimed ineffective assistance of appellate counsel previously before the Ohio Supreme Court . . . Ohio R. App. P. 26(B) is not now an available state remedy and pursuant to § 2254(b) [the petitioner] has exhausted his state remedies . . .

*Sales v. Wilson*, 2007 WL 4365400 (N.D. Oh. Dec. 10, 2007) (citations omitted). *But see State v. Davis*, 894 N.E.2d 1221 (Ohio 2008) (holding that "the filing of a motion seeking a discretionary appeal in this court does not create a bar to a merit ruling on a timely filed

5

application to reopen an appeal claiming ineffective assistance of appellate counsel under App.R. 26(B)").

The Sixth Circuit recently clarified that "the Ohio Court of Appeals may not deny a Rule 26(B) application on res judicata grounds unless the Ohio Supreme Court actually considered questions of ineffective assistance of appellate counsel on the merits during direct review." *Muntaser v. Bradshaw*, 429 Fed. Appx. 515, 518 (6th Cir. 2011)); *see also Goldberg v. Maloney*, 2012 U.S. App. Lexis 18530 (6th Cir. 2012) ("raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(b), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits").

Here, the Supreme Court of Ohio did not consider the merits of Freeman's claim of ineffective assistance of appellate counsel. (Dkt. 7-1 (Entry declining jurisdiction).) Therefore, while it is not clear whether Freeman can show "good cause" for his untimely application, such an application would not be barred by res judicata. In August of 2009, Freeman demonstrated that he was aware of his potential remedy under Rule 26(B), stating to this Court that he was "in the process of petitioning the Ohio Court of Appeals to reopen and re-hear this issue." (Dkt. 11 at 2.) A review of the state appellate court docket on September 4, 2012 revealed that Freeman had not yet filed an application under Rule 26(B).

Because Freeman must exhaust his Rule 26(B) remedy in state court before presenting his habeas claim under 28 U.S.C. § 2254(b), in the absence of a stay,[2] this unexhausted claim

---

[2] Even considering the Sixth Circuit's clarification on the issue of the application of res judicata to an application under Rule 26(B), the Court finds that a stay would be inappropriate in this case. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Here, Freeman has shown this Court no reason for his failure to file a Rule 26(B) application with the Ohio appellate court, making a stay inappropriate.

6

normally would require dismissal of Freeman's entire petition. *See Rhines*, 544 U.S. 269. However, Freeman's motion for a stay sought, in the alternative, dismissal of the unexhausted claim. (Dkt. 11 at 2 ("In the event that the court denies [the motion to stay], the Petitioner moves in the alternative to then waive and dismiss any review by the court of the issues of ineffective assistance of appellate counsel and proceed on the other properly exhausted claims for relief so as to avoid dismissal.").) In order to reach the merits of Freeman's remaining claims, this Court grants Freeman's alternative motion, and Ground Three of Freeman's petition is hereby dismissed. *See Rhines*, 544 U.S. at 278 (where a habeas petition contains both exhausted and unexhausted claims, and a stay is inappropriate, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief").

### III.     Ground One: Right to Confront Accuser

In his first ground for relief, Freeman asserts that the trial court violated his Sixth Amendment right to confront his accuser. He complains that the trial court prohibited his defense counsel from using certain evidence to impeach Anton Banks, who testified at trial that Freeman was his supplier of powder cocaine. (Tr. 133[3].)

#### A.     Background

Banks' testimony is as follows. On June 23, 2006, a girl named Nancy, later identified as a police informant, called Banks and requested to purchase cocaine. Banks then called Freeman and "told him that [Banks] needed $500 worth of cocaine and that [he'd] be down if [Freeman] has it," to which Freeman replied that "he had it, go ahead come down." Nancy picked up Banks and drove him to a house where Freeman's sister resided. While Nancy stayed in the car, Banks

---

[3] The trial transcript is filed at docket no. 10-1, and is cited herein as "Tr."

7

went into the house, where he found Freeman and two other men. Freeman told Banks to wait until the other men left. After the other men left, Banks gave $480 of Nancy's $500 directly to Freeman, keeping the remaining $20 for himself. Freeman then pulled a bag of cocaine out of a black box, weighed the bag on a scale, and gave it to Banks, who took the bag to Nancy's car. As they drove away, police cruisers pulled them over and Banks was arrested. (Tr. 92–102.)

Banks testified that, while he and Freeman were in jail, Freeman asked Banks if he had told the authorities anything, to which Banks responded "no." (Tr. 102.) Banks testified as to one other conversation between him and Freeman, which he said took place after the conversation in jail but before Banks gave his statement to the authorities. Specifically, Banks testified that Freeman "called me and asked me what did I tell . . . the police . . . and if I told anybody anything." (Tr. 104.) Banks did not testify at trial as to his response to Freeman.

Defense counsel's strategy was to discredit Banks' testimony. Prior to trial, Freeman secretly recorded a phone conversation with Banks. Freeman's counsel sought to use the transcript of this phone conversation to impeach Banks. The transcript follows:

> Banks: Water, sewage (inaudible) ever since that happened, that bullshit happened, it was bad. Everything was like 2, $300 apiece. Shit was going to get shut off. Bad.
>
> Freeman: All right. Well, I guess – I guess you must have did say that like you tell the truth to that girl because I got a thing back and my lawyer – from my lawyer and it said – it said that – that they don't got no tape, you know.
>
> Banks: Yeah.
>
> **Freeman: So, you must – you must have said what's going on and tell the truth, huh?**
>
> **Banks: Yeah. Hey, I said, I thought I told you. I said I had my shit and I don't know the dude I got it from, whatever.**
>
> Freeman: You told what – who – what dude you told them you got it from?

8

Banks: No. They was – what was your source is what –

**Freeman: What was your source.**

**Banks: And I said I don't even know the dude.**

Freeman: Oh, okay.

Banks: That's what that was.

Freeman: Yeah because I got that (inaudible) they said that they don't even got no – no tapes. So, I don't know what's going on.

Banks: Yeah.

Freeman: So, I'm looking to talk to my lawyer now. You heard from your lawyer?

Banks: No. I ain't – I ain't talked to nobody. I got to call him Monday.

Freeman: Oh, okay. They still talking about giving you 18 months?

Banks: Yeah.

Freeman: Oh, okay.

Banks: (Inaudible) I guess (inaudible).

Freeman: So – so, man, what – okay. Then yell me what if – what if the people, what if they ask you, what you – you know what I'm saying, you still going to tell them the truth? What you – what you say – what you going to tell them?

Banks: Tell who?

Freeman: The people that you said that – the girl – you told me that that girl – I asked you, you said, you know, what you said. **Now what if the people ask you what, you know, the boys, if they ask you what you going to tell them?**

**Banks: Well, everything was mine. That's all.**

Freeman: I'm saying what is you going to tell them though? I mean, I want to know. You got to let me know something.

Banks: What you mean? I don't even know what you're talking about.

**Freeman: I'm saying if they – if they ask – if they ask you, you know what I'm saying, say they come, you know,**

9

|  |  |
|---|---|
|  | **without your lawyer and ask you, you know, and they want to get some type of deal with you.** |
| **Banks:** | **Oh, no, I'm good.** |
| **Freeman:** | **What you going to tell them, man? I want – what you going to say?** |
| **Banks:** | **The shit was mine. That's it. That's what I told them like from the start.** |
| **Freeman:** | **That's what you told them from the start?** |
| **Banks:** | **Yeah.** |
| Freeman: | Oh, okay. |
| **Banks:** | **I told them from the start that shit was mine and, like I said, I don't even know the dude's name, whatever. The shit's mine.** (Inaudible). |
| Freeman: | All right. Okay. I'm cool with it. I'm cool with all that, you know what I mean because I'm cool with you as long as you just being truthful. I mean, you know what I'm saying (inaudible) but I don't got nothing to do with it, you know what I'm saying. |
| Banks: | Yeah. |
| Freeman: | If I'm wrong, I'm wrong but I ain't got nothing to do with it. So, that's that. So, I'm – I'm – you know what I'm, saying, I'm – what I'm going to do is just, you know, go ahead and – hey, I'm going to call you back. All right? |
| Banks: | All right. |

(Dkt. 7 at 10–12 (citing Ex. 12) (emphasis added).)  In his merit brief, Freeman provides a

reasonable interpretation of the above phone conversation:

> [Freeman] was asking Banks, "What [are] you (Banks) going to tell [the authorities], man?  I want [to know] what you [are] going to say [to the authorities]?", to which Banks replied, "The [cocaine] was mine.  That's it.  That's what I told [the authorities] like from the start."  When pressed further, Banks said, "I told [the authorities] from the start that [the cocaine] was mine and, like I said, I don't even know the [seller's] name, whatever.  The [cocaine is] mine."

(Dkt. 13 at 11.)

10

Freeman's counsel sought to use the phone recording or transcript to impeach Banks, arguing that Banks' phone statements were inconsistent with his trial testimony. Outside the presence of the jury, the trial court listened to the recording and heard arguments from counsel concerning whether Banks' statements were inconsistent and whether the recording was admissible for impeachment purposes. (Tr. 139–60.) The trial court determined that, during the recorded phone call, Banks was "not saying what happened. He's saying what he's going to say happened." In other words, Banks was relating to Freeman "the tale [Banks was] going to tell." (Tr. 156–57.) As explained by the Ohio appellate court:

> [T]he trial court determined that the differences between Banks' prior statements and his testimony were not material inconsistencies. According to the trial court, the testimony given at trial was a description of how Banks obtained the cocaine, while the statements on the phone were merely relating to the tale that Banks was going to tell the police. Since one statement was a statement of what happened and the other was a statement of what Banks was going to say happened, the two did not address the same subject and, there, were not inconsistent.

(Dkt. 7 Ex.12 at § 56 (Dkt. 7-1 at 55)).) Having determined that the phone conversation was not inconsistent with Banks' trial testimony, the trial court found it inadmissible for impeachment purposes.

### B. Confrontation Clause Violation

This Court must determine whether the trial court's decision to exclude the phone conversation for impeachment purposes was contrary to, or involved an unreasonable application of, clearly established Federal law; or if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has held that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per

11

curiam) (emphasis in original)); *see also Vasquez v. Jones*, 496 F.3d 564, 571 (2007) and *Washington v. Renico*, 455 F.3d 722, 728–31 (6th Cir. 2006) (both quoting *Fensterer*). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Here, the trial court's conclusion that the phone conversation at issue was not materially inconsistent with Banks' trial testimony was not an "unreasonable determination of the facts in light of the evidence," and the court's exclusion of Banks' phone statements did not violate the Confrontation Clause. While Banks' phone statements certainly pertained to his trial testimony, those statements were not on the same topic as that trial testimony. Rather, the phone statements purported to describe *what he would say to the authorities*, while his trial testimony described *what had actually happened*.

Moreover, the trial court's exclusion of the statements fell within its "wide latitude . . . to impose reasonable limits" on such evidence based on practical concerns such as avoiding confusion of the issues. *See Van Arsdall*, 475 U.S. at 679. Because Freeman did not take the stand at trial and could not be cross-examined regarding his statements, the trial court was concerned about the effect of admitting Freeman's half of the phone conversation. It would also be misleading, however, to admit Banks' phone statements without the context of Freeman's statements. (Tr. 147–50.) Because Banks' phone statements were not materially inconsistent with his trial testimony, their exclusion was a reasonable limit on Banks' cross-examination. The Court concludes that the exclusion of Banks' phone statements was not a violation of the Confrontation Clause.

### C. Harmless Error

Even if the trial court's exclusion of the phone conversation was a constitutional violation, it is subject to harmless error analysis. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)]." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). "To resolve the harmless error issue, we now must ask whether the constitutional violation 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007) (quoting *Brecht*, 507 U.S. at 623). This inquiry involves consideration of several factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *see also Earhart v. Konteh*, 589 F.3d 337, 345–46 (6th Cir. 2009) (applying the *Van Arsdall* factors under the *Brecht* standard). "If the constitutional error had no material effect, the verdict must stand. However, if the court has 'grave doubts' whether the error had a substantial or injurious effect or influence in determining the jury's verdict," the Court must grant the petitioner's writ. *Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009) (citing *O'Neal v. McAninch* 513 U.S. 432, 435–36 (1995); *Stallings v. Bobby*, 464 F.3d 576, 582 (2006)).

### 1. *Van Arsdall* Factors

(i) <u>Importance of Banks' Testimony</u>. Banks' testimony, described above, was important to the prosecution's case. As Freeman points out, Banks was the only witness to testify directly that Freeman possessed and trafficked in cocaine.

(ii) <u>Cumulative Testimony</u>.  Banks' testimony was not cumulative; no other witnesses testified directly as to the same facts.

(iii) <u>Corroborating Evidence</u>.  The prosecution presented significant corroborating evidence in its case against Freeman.  Most significantly, $480 of the pre-recorded currency was found (along with Freeman himself) in the car that Freeman regularly drove, as confirmed by the testimony of Banks and Freeman's sister; the other $20 was found on Banks.  Also importantly, the call records in Banks' seized mobile phone confirmed his testimony that "Nancy," the informant, called him to purchase cocaine and Banks then called Freeman to confirm that Freeman had enough cocaine to sell.  The lead detective also testified that "Nancy's" car was monitored when she picked up Banks on the day of the transaction, both by a following car and an audio recording device, further confirming Banks' testimony.

(iv) <u>Extent of Cross-Examination Permitted</u>.  The trial court permitted significant cross-examination on several topics, including the following: Banks' previous drug use and sales; his plea deal, including the possible penalties he would face with and without cooperation; who posted his bail; Banks' prior inconsistent statement under oath regarding whether he had seen the lockbox; and the identity of the two men at the house with Freeman (also drug dealers).

(v) <u>Strength of Prosecution's Case</u>.  As discussed above, the prosecution presented significant corroborating evidence against Freeman.  This Court concludes that the prosecution's case was very strong, supported not only by Banks' testimony but also by the use of pre-recorded currency, Banks' mobile phone records, police surveillance of Banks and "Nancy" on the day of the transaction, and other evidence in the record.

### *2.  Conclusion*

Banks' testimony was important and non-cumulative. However, the testimony was supported by substantial corroborating evidence, Banks was subject to significant cross-examination, and the prosecution presented a strong case against Freeman. For these reasons, the Court concludes that, even if the exclusion of the statements violated the Confrontation Clause, such error had no "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

## IV.  Ground Two: Insufficient Evidence

Freeman also asserts that he was convicted on insufficient evidence, violating his right to due process. Because Freeman did not specifically raise his insufficient evidence claim in his direct appeal,[4] instead asserting that his conviction was against the manifest weight of the evidence, Respondent argues that Freeman procedurally defaulted this claim.

Where "a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)). "While in such situations the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review. *Id.*

---

[4] Respondent contends that Freeman waived his sufficiency of the evidence claim by failing to move for acquittal under Ohio Criminal Rule 29 at the close of the state's case and renew his motion at the close of evidence. (Dkt. 7 at 22 n.8 (citing *State v. Roe*, 41 Ohio St. 3d 18, 25 (1989); *Dayton v. Rogers*, 60 Ohio St.2d 162, 163 (1979).)  The Ohio Supreme Court has since ruled, however, that a defendant's "'not guilty' plea preserve[s] his right to object to the alleged insufficiency of the evidence." *State v. Jones*, 91 Ohio St. 3d 335, 346 (2001) (citing *State v. Carter*, 64 Ohio St. 3d 218, 223 (1992)). *But see Harmon v. Wilson*, 2007 U.S. Dist. Lexis 91763 at *23 (N.D. Oh. Nov. 6, 2007) (comparing Ohio cases and noting that "the state courts of Ohio do not *consistently* apply a rule pursuant to which a defendant must renew a motion for acquittal at the close of all evidence in order to preserve the issue for appeal") (emphasis added).

(citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)) (internal citations omitted).

If a petitioner fails to raise an argument in his direct appeal, he procedurally defaults that claim. *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009)). The petition may then obtain federal habeas review of the claim only if he can demonstrate cause and prejudice to excuse his default. *Id.* (citing *Gray*, 518 U.S. at 162; *Tolliver v. Sheets*, 594 F.3d 900, 928 (6th Cir. 2010)).

Before the state courts, Freeman presented his claim that his conviction was against the manifest weight of the evidence, but did not specifically raise his claim that his conviction was supported by insufficient evidence.

The parties agree that the manifest weight and sufficiency standards are different—and that the manifest weight standard is a broader test than the sufficiency standard. However, Freeman asserts that "the sufficiency standard is a lesser included standard [in] the manifest weight standard," and "in order to determine if the conviction is or is not against the manifest weight of the evidence, [a court] must first reach the threshold determination that the evidence is legally sufficient." Therefore, according to Freeman, the Ohio appellate court's "ruling that the evidence was not against the manifest weight was a *de facto* determination that the evidence was also legally sufficient and the thus the issue has been properly exhausted as a fully included subset of the manifest weight issue." (Dkt. 13 at 17.)  Respondent disagrees, stating that "a

16

decision that the conviction is not against the manifest weight of the evidence would not be dispositive of the sufficiency of the evidence claim." (Dkt. 7 at 20 n. 4.)[5]

A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In the context of a habeas case, the Court applies the sufficiency-of-the-evidence standard by "determin[ing] whether it was objectively unreasonable for the [state court] to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that [the petitioner] committed the essential element of [the crimes charged] beyond a reasonable doubt." *Saxton v. Sheets*, 547 F.3d 597, 601–02 (6th Cir. 2008) (citing *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007)). To review whether the state court's determination was "objectively unreasonable," the Court engages in a two-step analysis:

> First, we must ask whether the evidence itself was sufficient to convict under *Jackson*. The inquiry ends if we determine that there was sufficient evidence to convict [the petitioner]. If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found [the petitioner] guilty beyond a reasonable doubt.

*Saxton*, 547 F.3d at 602 (citations omitted).

---

[5] Respondent cites the "prior history" section of the Ohio Supreme Court's decision in *State v. Green*, 569 N.E.2d 1038 (1991), which noted the lower court's ruling that the conviction was legally insufficient but not against the manifest weight of the evidence. A review of the lower appellate court opinion reveals that the appellate court found merit in the petitioner's claim that his conviction was against the weight of the evidence, but overruled those assignments of error due to a procedural rule requiring complete concurrence by the appellate panel. *State v. Green*, 1989 Ohio App. Lexis 4293, *3–4 (Fayette County Nov. 20, 1989); OH. CONST. art. IV, § 3(B)(3). The court sustained the petitioner's separate assignment of error, a mere majority of the panel finding that he was convicted on insufficient evidence. *Id.* at *6–7, 11. The Supreme Court of Ohio reversed, finding that the defendant was convicted on sufficient evidence. *Green*, 569 N.E.2d at 1041.

The Supreme Court of Ohio has held that the "sufficiency of the evidence and manifest weight of the evidence [standards] . . . differ both qualitatively and quantitatively." *State v. Wilson*, 865 N.E.2d 1264, 1269–70 (Ohio 2007) (citing *State v. Thompkins*, 678 N.E.2d 541 (1997)).

> [S]ufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? . . . [A]lthough there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.

*Id.* (citing *Thompkins*, 678 N.E.2d 541) (internal citations and quotation marks omitted). *See also Crawford v. Warden, Warren Corr. Inst.*, 2011 U.S. Dist. Lexis 127554, *28–29 (S.D. Ohio Sept. 29, 2011) (citing *Thompkins* and holding that the Court lacked jurisdiction to consider the habeas petitioner's manifest weight of the evidence claim).

While it may be difficult to imagine a scenario in which a judgment which is *not* against the manifest weight of the evidence may nevertheless be supported by insufficient evidence, Ohio's procedural rules facilitate the possibility. *See* Oh. Const. art. IV, § 3(B)(3); *Green*, 1989 Ohio App. Lexis 4293 at *3–4 (while a reversal under the manifest weight standard requires a complete concurrence by the appellate panel, a mere majority may reverse a conviction for insufficient evidence). Moreover, the Supreme Court of Ohio's holding that the standards "differ both *qualitatively* and quantitatively" precludes a finding that Freeman's manifest weight claim "alerted [the Ohio courts] to the fact that [he was] asserting [a] claim[] under the United States Constitution."

18

Because Freeman failed to properly raise a sufficiency of the evidence claim in the state courts, he procedurally defaulted this claim, barring habeas review unless he can demonstrate cause and prejudice for the default. *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *O'Sullivan v. Boerckel*, 526 U.S. 838, 854 (1999). Aside from ineffective assistance of counsel, which here may not constitute cause for procedural default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), Freeman has failed to demonstrate any potential cause for the default. This claim is therefore procedurally defaulted and barred from habeas review on the merits.[6]

## V. Conclusion

For the reasons set forth above, this Court finds that the claim set forth in Ground Three of the petition is unexhausted and **GRANTS** Freeman's alternative motion to dismiss Ground Three of his petition. (Dkt. 11.)

As to Ground One of the petition, the Court finds that the state courts' determination that the exclusion of Banks' phone statements was not a violation of the Confrontation Clause was not contrary to, and did not involve an unreasonable application of, clearly established Federal law. Nor was the determination "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

As to Ground Two of the petition, the Court finds that the claim is procedurally defaulted, barring federal habeas review.

The Court therefore **DENIES** the petition for writ of habeas corpus, this action is hereby **DISMISSED**, and the Clerk of Court is directed to enter judgment for Respondent.

---

[6] Even if the Court were to reach the merits of this claim, it is unlikely that Freeman could establish that the evidence was insufficient to support his conviction because, as discussed above, the prosecution presented a strong case against him.

**IT IS SO ORDERED.**

        **/s/ Peter C. Economus  -  September 6, 2012**
        **UNITED STATES DISTRICT JUDGE**